# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| TERESA MOORE,              ) | |
|                            ) | |
|    Plaintiff,      ) | |
|                            ) | |
| v.                         ) | Civil Action No.: 4:12-CV-730-RDP |
|                            ) | |
| CAROLYN W. COLVIN,         ) | |
| Acting Commissioner of     ) | |
| Social Security,           ) | |
|                            ) | |
|    Defendant.      ) | |

## MEMORANDUM OPINION

### I. INTRODUCTION

On August 17, 2009, Plaintiff Teresa Moore applied for supplemental security income under Title XVI of the Social Security Act. Plaintiff alleges disability commencing on September 16, 2009 because of hypertension, heart problems, pain in her feet and depression. The Commissioner denied the claim both initially and on reconsideration. Plaintiff filed a timely request for a hearing before an Administrative Law Judge ("ALJ"), and the ALJ held a hearing on July 14, 2011. (R. 10, 129). In a decision dated September 21, 2011, the ALJ found that Plaintiff was not disabled as defined by the Social Security Act and, thus, was ineligible for supplemental security income. (R. 19). On January 3, 2012, the Appeals Council denied Plaintiff's request for review; consequently, the ALJ's decision became the final decision of the Commissioner of the Social Security Administration. (R. 1-3). Plaintiff has exhausted her administrative remedies, and this court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons stated below, this court finds the decision of the Commissioner is due to be affirmed.

## II. ISSUES PRESENTED

Plaintiff presents the following issues for review: (1) whether the ALJ properly weighed the opinion of treating physician, Dr. Gerard A. Skaziak, and (2) whether the ALJ properly applied the pain standard.

## III. STANDARD OF REVIEW

The standard for reviewing the Commissioner's decision is limited. This court must affirm the Commissioner's decision if the Commissioner applied the correct legal standards and if the factual conclusions are supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

"No . . . presumption of validity attaches to the [Commissioner's] legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Walker*, 826 F.2d at 999. This court does not review the Commissioner's factual determinations *de novo.* The court will affirm those factual determinations that are supported by substantial evidence. "Substantial evidence" is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

The court must "scrutinize the record in its entirety to determine the reasonableness of the [Commissioner]'s factual findings." *Walker*, 826 F.2d at 999. A reviewing court may not look only to those parts of the record that support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence that detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

## IV. LEGAL STANDARD

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To make this determination, the Commissioner employs a five step, sequential evaluation process:

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986); 20 C.F.R. §§ 404.1520, 416.920.

The Commissioner normally must give substantial weight to the opinions of a treating physician. *Lamb v. Brown*, 847 F.2d 698, 703 (11th Cir. 1998). To discount the opinion of a treating physician, the Commissioner must provide good cause. *Id*. Good cause exists if the physician's opinion is not supported by evidence, the evidence supports a contrary finding, the physician's opinion is conclusory, or the physician's opinion is inconsistent with the doctor's own medical records. *Phillips v. Barnhart*, 357 F.3d 1232, 1240–41 (11th Cir. 2004); 20 C.F.R. § 404.1527.

In evaluating pain and other subjective complaints, the Commissioner must first consider whether the claimant demonstrated an underlying medical condition, and then "*either* (2) objective medical evidence that confirms the severity of the alleged pain arising from that

condition *or* (3) that the objectively determined medical condition is of such a severity that it can be reasonable expected to give rise to the alleged pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (emphasis added); *see also Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); 20 C.F.R. § 404.1529.

## V. FACTS

Plaintiff has an eighth grade education and was age forty-four at the time of the administrative hearing.  (R. 62, 56).  She has no past relevant work experience.  (R. 18). Plaintiff originally alleged she was unable to work because of hypertension, heart problems, pain in her feet and depression; however, on appeal, Plaintiff only contests the ALJ's findings regarding her foot pain.  (R. 129).

*Physical and Mental Limitations*

On November 20, 2009, Dr. Mary Arnold performed a Psychological Evaluation on Plaintiff.  During the evaluation, Dr. Arnold noted that Plaintiff walked "with a casual gait of long stride [without] obvious impairment or [an] overt pain indicator" and estimated that she functioned in the borderline to low average range.  (R. 178).  In December 2009, Dr. Alvin V. Tenchavez also examined Plaintiff.  He stated that Plaintiff could "heel, toe, [and] tandem walk …, stoop and rise."  (R. 183).

Dr. Robert Estock conducted a Psychiatric Review Technique and a Mental Residual Functional Capacity Assessment on January 13, 2010.  He determined that Plaintiff had moderate limitations in activities of daily living and social functioning.  He further stated that she had moderate limitations in maintaining concentration, persistence and pace.  (R. 195). Additionally, Dr. Estock opined that Plaintiff could work for two hour periods and would likely miss one to two days per month because of her psychological symptoms.  (R. 201).

The record indicates that Dr. Gerard A. Skaziak treated Plaintiff for her "painful plantar feet" from March 2010 to June 2011. On March 4, 2010, Dr. Skaziak noted that the clamant suffered digital deformities, hyperkeratotic lesions and onychomycosis on her toenails. Plaintiff reported that she could not ambulate or wear normal shoes without pain. Dr. Skaziak recommended that the she use skin cream and purchase custom molded orthotics and custom molded shoes, diabetic style. (R. 206). In May 2010, Plaintiff told Dr. Skaziak that the treatment had significantly reduced her pain but that the condition had reoccurred. Dr. Skaziak noted that she "may require surgical intervention should conservative treatments fail." (R. 205). Later, in June 2010, Dr. Skaziak and Plaintiff again discussed surgery and conservative treatments, and Plaintiff elected to continue conservative treatments. (R. 206).

On December 27, 2010, Dr. Skaziak recommended surgical treatment for Plaintiff's foot conditions but noted that Plaintiff could not afford the surgery or the recommended custom shoes. (R. 213). Additionally, he wrote a letter to the Guntersville Housing Authority asking that they give Plaintiff a ground floor apartment. (R. 208). In May 2011, Plaintiff appeared with a pair of "prefab diabetic shoes." Dr. Skaziak stated that these shoes may help her condition but still recommended custom inserts and custom diabetic shoes. (R. 210).

In a Physical Capacity Evaluation dated June 20, 2011, Dr. Skaziak stated that Plaintiff could only walk or stand for one hour in an eight hour day. He opined that she could frequently lift and occasionally carry up to ten pounds; frequently push and pull; occasionally bend, squat, climb, crawl and reach; and constantly use her hands for simple grasping, fine manipulation and fingering. (R. 216-17). Regarding her pain, Dr. Skaziak determined that it ranked as "moderately severe" and, because of her pain, found that she would likely have to miss three or more days a month of work. (R. 218).

*The ALJ Hearing*

After the Commissioner denied Plaintiff's request for supplemental security income, Plaintiff requested and received a hearing before an ALJ. (R. 51). At the hearing, Plaintiff testified that the pain in her feet would not allow her to stand up like she wanted. She stated that the pain would "come[] up [her] legs, too." Additionally, she stated that she would often have muscle spasms in her legs. (R. 66). She ranked the pain as a nine on a one-to-ten scale. (R. 70).

Plaintiff testified that she would soak her feet in Epsom salts and water every day. Beyond this, Plaintiff stated that she mostly slept all day because her medication made her drowsy. (R. 68). Plaintiff also testified that she was prescribed Klonopin and Lortab for her pain and Somas for her hypertension. (R. 65). She also stated that her daughters did her grocery shopping and that she no longer went to church or to any other organized events. (R. 70-71).

Norma Stricklin, a vocational expert, then testified concerning the type and availability of jobs that Plaintiff could perform. The ALJ asked Ms. Stricklin to consider Plaintiff limited according to Dr. Skaziak's Physical Capacity Evaluation, excluding his opinion regarding the severity of her pain. She opined that Plaintiff could work as a final assembler, a bench hand and a circuit board inspector. However, she stated that if Plaintiff's pain was consistent with Dr. Skaziak's opinion, it "would likely preclude the ability to perform these or other jobs." (R. 70-72).

*The ALJ's Decision*

On September 21, 2011, the ALJ issued a decision finding that Plaintiff was not disabled under the Social Security Act. (R. 19). First, the ALJ found that Plaintiff had not engaged in substantial gainful activated since the alleged onset of her disability. (R. 12). Next, the ALJ found that Plaintiff's bilateral foot keratotic lesions and bony deformities and her hypertension

6

qualified as severe impairments; however, he concluded that these impairments, singly or in combination, did not manifest the specific signs and diagnostic findings required by the Listing of Impairments. (R. 12, 15). He additionally noted that Plaintiff suffered from the non-severe impairments of alcohol abuse and adjustment disorder. (R. 14).

Next, the ALJ determined that Plaintiff had the Residual Functional Capacity ("RFC") to perform sedentary work. To support this conclusion, he found that although Plaintiff's medically determinable impairments could reasonable cause the alleged symptoms, her statements regarding the severity and limiting effects of the impairments were not credible. The ALJ noted that she had received only conservative treatment for her condition and that her testimony was inconsistent with her daily activities listed in her Function Report. He further found that Plaintiff's testimony was inconsistent with the examinations of Drs. Arnold and Tenchavez. (R. 16-17).

Additionally, the ALJ determined the Dr. Skaziak's opinion regarding Plaintiff's subjective pain was not credible. He found that this part of his opinion was inconsistent with his own treatment records and with the rest of the objective record. (R. 17).

Based on these findings and the testimony of the vocational expert, the ALJ concluded that jobs existed in significant numbers in the national economy that Plaintiff could perform and that, therefore, Plaintiff was not disabled under the Social Security Act. (R. 18).

## VI. DISCUSSION

After careful review, the court concludes that the ALJ's fact finding is supported by substantial evidence and that correct legal standards were applied. The court addresses Plaintiff's arguments below.

*Dr. Skaziak's Opinion*

Plaintiff contends that the ALJ improperly assigned little weight to Dr. Skaziak's opinion of her pain. To the contrary, the court finds that substantial evidence supports the ALJ's findings.

In assigning weight, "the testimony of a treating physician must be given substantial or considerable weight unless good cause is shown to the contrary." *Crawford v. Comm'r Of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)) (internal citations omitted). The ALJ has good cause for rejecting a treating physician's opinion when "the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004) (citing *Lewis*, 125 F.3d at 1440).

In the present case, the ALJ determined that treating physician Dr. Skaziak's opinion was not entitled to great weight, to the extent it differed from his RFC findings, because it was inconsistent with his own treatment records and with the remainder of the record. (R. 17). The ALJ noted that Dr. Skaziak's conservative treatment, including skin cream, pain medications, custom inserts and diabetic shoes, of Plaintiff was inconsistent with his opinion of her level of pain. The Eleventh Circuit has stated that "[a] doctor's conservative medical treatment for a particular condition tends to negate a claim of disability." *Sheldon v. Astrue*, 268 Fed. App'x 871, 872 (11th Cir. 2008) (citing *Wolfe v. Chater*, 86 F.3d 1072, 1078 (11th Cir. 1996)).

He further cited the findings of examining physicians, Drs. Arnold and Tenchavez. Both examining physicians stated Plaintiff could walk without difficulty or obvious pain. Dr. Tenchavez further stated that Plaintiff "had no pain, restriction, or swelling on review of the

joints." The ALJ noted that, despite her allegations to Dr. Skaziak that she could not wear normal shoes, Plaintiff wore "suede ankle-high boots" to her examination with Dr. Arnold. (R. 17). This inconsistent evidence, both in the record and in Dr. Skaziak's own treatment, provided "good cause" to discredit his assessment of Plaintiff's pain. *See Phillips*, 357 F.3d at 1240-41.

*Plaintiff's Testimony*

Plaintiff argues that the ALJ did not properly discredit her testimony regarding her subjective pain. This argument lacks merit.

When a claimant attempts to establish disability through his testimony of pain or other subjective symptoms, the three-part pain standard applies. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). To meet the pain standard, a claimant must demonstrate "(1) evidence of an underlying medical condition and *either* (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition *or* (3) that the objectively determined medical condition is of such a severity that it can be reasonable expected to give rise to the alleged pain." *Id*. (emphasis added). A claimant's subjective testimony supported by medical evidence that satisfies the pain standard is sufficient to support a finding of disability. *Foote v. Charter*, 67 F.3d 1553, 1561 (11th Cir. 1995).

The ALJ may discredit a claimant's subjective testimony of pain if he does so specifically and articulates his reasons for doing so. *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991). Furthermore, "[a] clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote,* 67 F.3d at 1562 (internal citations omitted).

The ALJ cited multiple reasons for discrediting Plaintiff's testimony and those reasons are supported by substantial evidence. He noted that Plaintiff's testimony – like Dr. Skaziak's opinion – was inconsistent with the examinations of Drs. Arnold and Tenchavez. (R. 17). He found that although Plaintiff alleged side effects from her medications, she never complained of any side effects. (R. 17). The Eleventh Circuit has found that "a claimant's failure to report side effects to his physicians is an appropriate factor for the ALJ to consider in evaluating whether a claimant's alleged symptoms are consistent with the record." *Werner v. Comm'r of Soc. Sec.*, 421 Fed. App'x 935, 938 (11th Cir. 2011) (citing *Swindle v. Sullivan*, 914 F.2d 222, 226 (11th Cir. 1990)).

The ALJ also determined that Plaintiff's testimony was inconsistent with her previously reported activities. Specifically, Plaintiff's allegation that she spent most of her time sleeping conflicted with her Function Report. Plaintiff reported she visited her daughter and stepfather, did laundry, made her bed, washed dishes and cleaned her house "a little at a time." (R. 17). Furthermore, these daily activities listed in the Function Report "are [consistent] with the ability to perform sedentary work." (R. 17).

Plaintiff correctly notes that the ability to perform some daily activities does not negate disability. *See Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997). The *Lewis* decision, however, does not stand for the proposition that an ALJ cannot consider a claimant's daily activities. *See Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987) ("The regulations do not, however, prevent the ALJ from considering daily activities at the fourth step of the sequential evaluation process."). In fact, "daily activities should be considered in evaluating 'the extent to which [Plaintiff's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence.'" *Engram v. Colvin*, 1:12CV388-MHT, 2013 WL

4442023 at *9 (M.D. Ala. Aug. 15, 2013) (quoting 20 C.F.R. § 404.1529(a)).  Thus, because Plaintiff's Function Report was inconsistent with her alleged activities and consistent with his RFC determination, the ALJ did not err by using her daily activities to discredit her testimony.

The court finds that the ALJ properly applied the pain standard and that substantial evidence in the record supports his basis for discrediting Plaintiff's testimony.

### VII. CONCLUSION

For the reasons stated above, this court concludes that the decision of the Commissioner is supported by substantial evidence and is due to be affirmed.  The court will enter a separate order to that effect simultaneously.

**DONE** and **ORDERED** this      10th      day of December, 2013.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE